| |
|---|
| **Glenmede Trust Co., N.A. v Infinity Q Capital Mgt. LLC** |
| 2024 NY Slip Op 30373(U) |
| January 31, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 160830/2022 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. MELISSA A. CRANE**          PART             60M

*Justice*

-------------------------------------------------------------------------------X

THE GLENMEDE TRUST COMPANY, N.A.,

                      Plaintiff,

                - v -

INFINITY Q CAPITAL MANAGEMENT LLC,JAMES
VELISSARIS, LEONARD POTTER, SCOTT LINDELL,
BONDERMAN FAMILY LIMITED PARTNERSHIP, LP,
INFINITY Q MANAGEMENT EQUITY LLC,TRUST FOR
ADVISED PORTFOLIOS, U.S. BANCORP FUND
SERVICES, LLC,EISNERAMPER LLP, QUASAR
DISTRIBUTORS, LLC,JOHN C. CHRYSTAL, ALBERT J.
DIULIO, CHRISTOPHER E. KASHMERICK, HARRY E.
RESIS, RUSSELL B. SIMON, STEVEN J. JENSEN,

                      Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160830/2022 |
| MOTION DATE | 11/15/2023 |
| MOTION SEQ. NO. | 010 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 010) 123, 124, 125, 126,
127, 128, 129, 130, 131, 149, 154, 159

were read on this motion to/for                    DISMISS                    .

      Defendant EisnerAmper LLP ("EisnerAmper" or "Defendant") has moved to dismiss

Plaintiff The Glenmede Trust Company, N.A.'s ("Glenmede" or "Plaintiff") amended complaint

pursuant to CPLR 3211(a)(7). The amended complaint alleges one cause of action against

EisnerAmper, for violation of section 11 of the Securities Act of 1933 (15 USC § 77k). For the

following reasons, the court denies EisnerAmper's motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

      The court refers to its December 21, 2023 decision and order on Defendant US Bancorp

Fund Services, LLC's ("US Bancorp") motion to dismiss (NYSCEF Doc. No. 199) for a more

complete recitation of the facts related to this matter. However, the court provides factual

background specific to EisnerAmper.

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT**          **Page 1 of 12**
**LLC ET AL**
**Motion No.  010**

1 of 12

[* 1]

This matter arises in connection to the collapse of a mutual fund called Infinity Q Diversified Alpha Fund ("Mutual Fund"). Defendant Infinity Q Capital Management LLC ("Infinity Q") managed the Mutual Fund, selecting the Mutual Fund's portfolio of investments (Amended Complaint, NYSCEF Doc. No. 101, ¶¶ 28, 54). Individual defendants James Velissaris ("Velissaris"), David Bonderman ("Bonderman"), Leonard Potter ("Potter"), and Scott Lindell ("Lindell") launched Infinity Q in 2014, allegedly to act as investment advisor for both the Mutual Fund and a separate private hedge fund ("Hedge Fund") (*id.*, ¶ 4). Rather than stock the Mutual Fund with traditional stocks and bonds, Infinity Q selected variance swaps as part of its strategy to "generate absolute returns that did not depend on what direction the market moved, but rather on how much the market moved (i.e., how volatile the market was)" (*id.*, ¶ 5).[1] However, because these types of securities had no readily available market prices, Infinity Q had to generate its own net asset value ("NAV") of the assets in the Mutual Fund on a daily basis (*id.*, ¶¶ 6-7). Infinity Q generated this NAV using the third-party valuation service that it purchased from Bloomberg, called BVAL (*id.*, ¶ 131). The root of both this action and the criminal action in which Velissaris pled guilty is that, rather than report the NAV accurately, Velissaris artificially inflated the NAV by hundreds of millions of dollars through manipulating BVAL (*id.*, ¶¶ 9-10, 167). In particular, the amended complaint alleges that Velissaris, among other things, entered incorrect inputs into BVAL and altered BVAL's underlying code, resulting in the swaps being "massively overvalued" for several years (*id.*, ¶¶ 169-78). This resulted in an SEC investigation beginning in 2020 and the subsequent collapse of the Mutual Fund (*id.*, ¶¶ 11-13).

---

[1] According to the amended complaint, variance swaps allow buyers to "bet on the volatility of an underlying asset, security, index, or currency exchange" (Amended Complaint, ¶ 116). For each variance swap, the parties determine a "strike price" (*id.*, ¶ 118). If volatility "exceeds the strike price, the buyer of the swap . . . receives the payment," but if volatility "is below the strike price, the seller of the swap . . . receives the payment" (*id.*).

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT        Page 2 of 12
LLC ET AL
Motion No.  010

2 of 12

[* 2]

Plaintiff alleges causes of action under sections 11, 12(a)(2), and 15 of the Securities Act of 1933 against a number of "gatekeeper" defendants, who allegedly abdicated their duties and allowed the conduct that led to the collapse of the Mutual Fund to occur. One of those alleged gatekeepers is EisnerAmper. EisnerAmper is a public accounting firm which acted as the Mutual Fund's auditor since 2018 (*id.*, ¶ 34). In this role, EisnerAmper allegedly "conducted tasks to validate Infinity Q's valuation of the Mutual Fund's holdings, including attempting to independently verify those valuations," and also "agreed to review the Mutual Fund's portfolio on a quarterly basis to ensure that it was promptly made aware of any new derivative positions held by the Mutual Fund" (*id.*).

In particular, EisnerAmper allegedly issued audit reports in which EisnerAmper "stated that the Mutual Fund's financial statements conformed with United States generally accepted accounting principles ('U.S. GAAP') and presented fairly, in all material respects: (a) the consolidated financial position of the Mutual Fund as of the audit date; (b) the consolidated results of the Mutual Fund's operations as of the audit date; and (c) the changes in net assets and financial highlights for each of the years in the two-year period then ended" (*id.*, ¶ 104). The amended complaint also alleges, in connection with its validation of Infinity Q's valuation of the Mutual Fund's holdings, EisnerAmper "communicated with the custodian, prime broker, and third-party counterparties of the Mutual Fund about those holdings" and "evaluated significant estimates made by Infinity Q by conducting a 're-performance' test that attempted to replicate Infinity Q's valuation of the Mutual Fund's assets" (*id.*, ¶ 106).

The Mutual Fund is a "series" of Defendant Trust for Advised Portfolios ("Trust") (*id.*, ¶ 32). On December 20, 2019, the Trust issued shares in the Mutual Fund pursuant to a registration statement ("December 2019 Registration Statement") (*id.*, ¶¶ 32, 142). The December 2019

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT**                    **Page 3 of 12**
**LLC ET AL**
**Motion No.  010**

3 of 12

[* 3]

Registration Statement states that the "information for the fiscal years ended August 31, 2018 and August 31, 2019 have been audited by EisnerAmper" (December 2019 Registration Statement, NYSCEF Doc. No. 127, p. 37; Amended Complaint, ¶ 146 [alleging that the December 2019 Registration Statement represented that EisnerAmper audited the NAV for 2018 and 2019]). Elsewhere, the December 2019 Registration Statement indicates that EisnerAmper "is the independent registered public accounting firm for the Fund, whose services include auditing the Fund's consolidated financial statements" (*id.*, p. 80). Additionally, the December 2019 Registration Statement contains as an exhibit a "Consent of Independent Registered Public Accounting Firm," pursuant to which EisnerAmper allegedly "consented to its inclusion in the December 2019 Securities Act Filing" (*id.*, p. 120; Amended Complaint, ¶ 145).

The amended complaint alleges only one cause of action against EisnerAmper, for violation of section 11 of the Securities Act. This cause of action is based on allegedly false statements of material fact and/or omitted material facts within the December 2019 Registration Statement (Amended Complaint, ¶ 270). Plaintiff asserts that EisnerAmper is liable under section 11 because (1) EisnerAmper certified the Mutual Fund's financial statements that were materially false (*id.*, ¶ 274; Opposition, NYSCEF Doc. No. 159, p. 14); (2) EisnerAmper allegedly falsely stated that its audits complied with industry standards (Amended Complaint, ¶ 105; Opposition, pp. 16-17); and (3) EisnerAmper omitted from its audit statements incorporated in the December 2019 Registration Statement a number of "red flags" of which it was aware or should have been aware, thus making the December 2019 Registration Statement misleading (Amended Complaint, ¶¶ 22, 139, 158, 164, 183, 192, 195, 202, 270; Opposition, p. 17).

Included among those "red flags" that Plaintiff alleges in the amended complaint, and reiterates in its opposition papers (Opposition, pp. 17-18), are the following:

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  010**

**Page 4 of 12**

4 of 12

- Disparities between Infinity Q valuations of the Mutual Fund's holdings and counterparty valuations of those holdings (Amended Complaint, ¶ 192 ["EisnerAmper [] had access to the counterparties' valuations, yet [it] simply ignored that Infinity Q's valuations were significantly higher"]).

- Differences between valuations of "identical positions" held by both the Mutual Fund and Hedge Fund, of which EisnerAmper was "privy" (*id.*, ¶¶ 197-202 [describing how Infinity Q would negotiate a "single variance swap trade" for both the Mutual Fund and Hedge Fund but that "because of Velissaris's manipulation, the Mutual Fund and Hedge Fund would have different marks for identical positions"]).

- "[M]athematically impossible" valuations that Infinity Q reported (*id.*, ¶¶ 204-207 [alleging that Infinity Q "valued variance swaps at a price that would require volatility to be below zero for the remainder of its term" but that "because volatility can never be negative, these valuations were impossible," and that this was "another major red flag that should have been obvious to those auditing the valuations"]).

- EisnerAmper's lack of access to "vital information necessary to test the accuracy of Infinity Q's valuation" during its "re-performance" test in which it "attempted to replicate Infinity Q's valuation of the Mutual Fund's assets" (*id.*, ¶¶ 209-210 [alleging that a senior audit manager at EisnerAmper disclosed to government investigators that EisnerAmper "did not have access to the corridor values for the Mutual Fund's corridor swaps," which were "necessary to test the accuracy of Infinity Q's valuation"]).

After the Mutual Fund collapsed in March 2021, shareholders filed class action lawsuits related to the collapse of the Mutual Fund, and the parties reached a settlement that the court preliminarily approved on October 17, 2022 (*In re Infinity Q Diversified Alpha Fund Securities Litig.*, Index No. 651295/2021, NYSCEF Doc. No. 181). Plaintiff determined to opt out of the class action settlement and filed the complaint in this action on December 19, 2022 (Complaint, NYSCEF Doc. No. 2). Defendants, including EisnerAmper, then moved to dismiss. On May 3, 2023, after Plaintiff informed Defendants that it intended to amend its complaint as of right, Defendants, including EisnerAmper, stipulated to withdraw their pending motions to dismiss (Stipulation Withdrawing Motions to Dismiss, NYSCEF Doc. No. 96).

Plaintiff then filed the amended complaint on May 26, 2023. The amended complaint asserts causes of action for violation of sections 11, 12(a)(2), and 15 of the Securities Act of 1933. However, the amended complaint only asserts a single cause of action against EisnerAmper, for

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT        Page 5 of 12
LLC ET AL
Motion No.  010

5 of 12

violation of section 11. Defendants, including EisnerAmper, moved to dismiss the amended complaint for failure to state a claim pursuant to CPLR 3211(a)(7), and the court held oral argument on the motions to dismiss on November 15-16, 2023.

## **DISCUSSION**

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Chapman, Spira & Carson, LLC v Helix BioPharma Corp.*, 115 AD3d 526, 527 [1st Dept 2014]).

The court notes that, despite attaching to its motion papers the affirmation of Brian P. Morgan (NYSCEF Doc. No. 125) and a number of exhibits referenced therein (NYSCEF Doc. Nos. 126-131), EisnerAmper has not moved to dismiss the amended complaint pursuant to CPLR 3211(a)(1) on the basis of a "defense [] founded upon documentary evidence" (CPLR 3211(a)(1); Notice of Motion, NYSCEF Doc. No. 123). Rather, the motion is limited to failure to state a cause of action under CPLR 3211(a)(7). Nevertheless, the court may consider documentary evidence where it flatly contradicts the plaintiff's cause of action (*see Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 134-35 [1st Dept 2014]). When a defendant submits documentary evidence, the standard shifts from "whether the plaintiff stated a cause of action to whether it has one" (*id.* at 135 [internal citations and quotation marks omitted]; *Kaplan v Conway & Conway*, 173 AD3d 452, 453 [1st Dept 2019] [finding that the motion court "properly considered the emails submitted by defendants in dismissing the complaint"]). Therefore, the court will consider the documentary evidence that EisnerAmper has submitted.

1. Section 11

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT       Page 6 of 12
LLC ET AL
Motion No.  010**

[* 6]

6 of 12

Section 11 of the Securities Act of 1933 allows a purchaser of securities to sue where a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" (15 USC § 77[k][a]). To state a cause of action under section 11, a plaintiff must allege that they "(1) purchased a registered security . . . (2) the defendant participated in the offering in a manner specified by the statute; and (3) the registration statement contained an untrue statement of a material fact or omitted to state a material fact" (*Mahar v General Electric Company*, 188 AD3d 534, 535 [1st Dept 2020] [internal citation and quotation marks omitted]; *Hoffman v AT & T Inc.*, 67 Misc3d 1212(A), *5 [Sup Ct, NY County 2020]).

However, liability under section 11 is limited to discrete categories of defendants, and "courts have construed the list strictly" (*In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, *8 [SDNY Aug 8, 2005]). Section 11 liability may apply to signatories of the registration statement, directors or partners of the issuer, whether named in the registration statement or not, underwriters, and "every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement" (15 USC § 77[k][a]; *In re Lehman Brothers Securities and Erisa Litig.*, 131 F Supp 3d 241, 260 [SDNY 2015] ["Accountants may be found liable under Section 11 for portions of registration statements that they audited."]). While liability is "virtually absolute" for issuers of securities, "experts such as accountants" are accorded a "due diligence defense" (*In re Wachovia Equity Securities Litigation*, 753 F Supp 2d 326, 378-79 [SDNY 2011] [internal citations and quotation marks omitted] [denying dismissal of section 11 claim against accountant based on allegedly false audit reports and financial statements that the

accountant audited, finding that even though the accountant could ultimately avoid liability based on due diligence defense, that was not sufficient on a motion to dismiss]).

As s preliminary matter, the court rejects EisnerAmper's argument that its 2019 audit report constitutes a **non-actionable** opinion. In *Omnicare, Inc. v Laborers Dist. Council Const. Industry Pension Fund* (575 US 175 [2015]), the US Supreme Court evaluated when a purported opinion can nevertheless be the basis for liability under section 11. The court found that, while section 11 only creates liability for untrue statements of "fact," a party can still be held liable for the opinion where the party does not sincerely believe the opinion, where the opinion contains "embedded statements of fact," or where opinion "omits material facts about the [] inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself" (*id.* at 183-89; *see also In re Pareteum Securities Litig.*, 2021 WL 3540779, **13, 21-22 [SDNY Aug 11, 2021]; *In re Deutsche Bank AG Securities Litig.*, 2016 WL 4083429, *21 [SDNY July 25, 2016]). While *Omnicare* did not involve an auditor's opinion, other cases citing *Omnicare* have (*see In re Lehman Brothers Securities and Erisa Litig.*, 131 F Supp 3d 241, 259-60 [SDNY 2015] [rejecting defendant's claim that section 11 does not apply to audit opinions and finding that "[a]ccountants may be found liable under Section 11 for portions of registration statements that they audited"]; *In re Petrobras Securities Litig.*, 2016 WL 1533553, *3 [SDNY Feb 19, 2016] [rejecting argument for dismissal based on audit opinions being "statements of opinion rather than fact" because "even assuming an auditor's opinion is to be treated the same as the opinions described in *Omnicare*, that case sets out three avenues of liability for statements of opinion under § 11, two of which are adequately alleged here"]).

Here, even if Plaintiff failed to allege section 11 liability based on its theories that (1) financial statements such as those contained in the December 2019 Registration Statement

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT**          **Page 8 of 12**
**LLC ET AL**
**Motion No.  010**

8 of 12

constitute embedded statements of fact or (2) EisnerAmper's statement of compliance with industry standards was a false statement of fact, it would not insulate EisnerAmper from liability. Rather, Plaintiff has sufficiently alleged section 11 liability against EisnerAmper based on EisnerAmper's alleged omission of material facts. A plaintiff can succeed on a section 11 omissions claim by alleging "red flags," the omission of which would render a statement false or misleading (*see Lehman*, 131 F Supp 3d at 258-59; *Pareteum*, 2021 WL 3540779, *22). In *Lehman*, the court denied summary judgment as to whether an auditor made false or misleading statements, noting that evidence would allow a jury to infer that the auditor had information suggesting that Lehman's balance sheets were misleading (*Lehman*, 131 F Supp 3d at 258-59). Similarly, in *Pareteum*, the court denied a motion to dismiss a section 11 claim against an accountant, finding that "[m]arket letters of short-sellers describ[ing] how Parateum's Backlog was dangerously concentrated and of questionable reliability, rais[ed] 'red flags' as to the continuing reliability of Parateum's revenue and growth" (*Pareteum*, 2021 WL 3540779, *22). The court found sufficient the plaintiff's allegations that through failing to disclose "if Parateum's internal controls had improved" to assess the accuracy of the growth, "misleading information was embedded and further information was necessary to make these figures not misleading" (*id.*).

Here, Plaintiff has alleged a number of red flags, the omission of which would render EisnerAmper's audit opinion materially misleading. In particular, the amended complaint alleges that "EisnerAmper [] had access to [] counterparties' valuations, yet [it] simply ignored that Infinity Q's valuations were significantly higher than the counterparties' valuations" (Amended Complaint, ¶¶ 192, 194-95). Even more than mere "access" to information, Plaintiff alleges that EisnerAmper actually was aware of these disparate valuations, alleging that the "differences between Infinity Q's valuations and the counterparties' valuations were discussed during audits of

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 9 of 12
LLC ET AL
Motion No. 010

9 of 12

the Mutual Fund," but that the auditors "simply disregarded the counterparty valuations" (*id.*, ¶¶ 194-95). Further, the amended complaint alleges at least one specific instance of disparate valuations dating back to 2018 (*see id.*, ¶ 193 [describing that Infinity Q provided US Bancorp with counterparty brokerage statements from Deutsche Bank in August 2018, whose valuations the US Bancorp executive noted "differ[ed] quite a bit" from Infinity Q's valuations"]).

In response, EisnerAmper asserts that Plaintiff "fails to identify any such trades" but that the "SEC Complaint (the source of Plaintiff's allegation) makes clear that the trades and positions at issue were not audited by EisnerAmper as part of the 2019 Audit Report" (Reply, NYSCEF Doc. No. 179, p. 10). It is not clear to which trades from the SEC's complaint EisnerAmper is referring. Further, even if EisnerAmper is correct that Plaintiff learned of some disparate valuations through the SEC's complaint, EisnerAmper has provided the court with no basis for holding that the SEC's complaint is an **exclusive** summation of all allegations related to Infinity Q, and that the absence of an allegation in that complaint means that the court cannot consider that allegation here. The amended complaint alleges that EisnerAmper was aware of the red flag of disparate valuations going back to 2018, even if the SEC's complaint does not. For purposes of this motion to dismiss, these allegations are sufficient (*see Pareteum*, 2021 WL 3540779, *22 [holding that "[a]t the pleading stage," it was sufficient for the plaintiff to allege that, where Parateum disclosed "extraordinary growth,"  the auditor "had the duty to disclose if Parateum's internal controls had improved to assess if [the] continuing growth was accurate and reliable," and that "further information was necessary to make these figures not misleading"]).

Plaintiff also alleges the red flag of disparate valuations between the Mutual Fund and the Hedge Fund for "identical positions" (Amended Complaint, ¶ 197). According to Plaintiff, Infinity Q would "negotiate a single variance swap trade and allocate a portion to the Mutual Fund and a

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT       Page 10 of 12
LLC ET AL
Motion No.  010

[* 10]

10 of 12

portion to the Hedge Fund" but that "because of Velissaris's manipulation, the Mutual Fund and Hedge Fund would have different marks for identical positions" (*id.*, ¶¶ 198-99). The amended complaint alleges that EisnerAmper was the auditor for both funds and was "privy to these disparate valuations of the exact same positions, but once again turned a blind eye" (*id.*, ¶¶ 201-02). Further, the amended complaint refers to the SEC's investigation finding improper valuations dating back to 2017 to infer that the disparate valuations of identical positions in the different funds dated back to 2017 as well (*id.*, ¶ 203). EisnerAmper responds by asserting that the SEC's complaint "identifies exactly one investment which was equally allocated to the Fund and the Private Fund but marked at different values," and that the purportedly disparate marking was from November 2020, after EisnerAmper's August 31, 2019 audit (Reply, p. 11 [citing SEC Complaint, NYSCEF Doc. No. 128, ¶ 161]). The court rejects EisnerAmper's argument for the same reason the court rejected the argument against the counterparty disparate valuations red flag. Namely, Plaintiff need not be hamstrung by precisely what the SEC's complaint alleged.[2] The amended complaint alleges that EisnerAmper was aware of the red flag of disparate valuations between the Mutual Fund and the Hedge Fund where the valuations—in theory—should have been identical. This is sufficient at this stage.

The court has considered the parties' remaining contentions and finds them unavailing. Accordingly, it is

**ORDERED** that EisnerAmper's motion to dismiss is denied in its entirety; and it is further

---

[2] Regardless, the SEC Complaint appears to refer to the disparate marking that EisnerAmper discusses in its papers as an "example" of "widely disparate mark**s**," plural, rather than the **only** instance of a disparate marking between the Mutual Fund and the Hedge Fund (SEC Complaint, ¶¶ 160-61).

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  010**                                                                                  **Page 11 of 12**

11 of 12

**ORDERED** that EisnerAmper must answer the amended complaint within 20 days of this decision and order.

<table>
<tr><td>01/31/2024<br>**DATE**</td><td></td><td></td><td>**MELISSA A. CRANE, J.S.C.**</td><td></td></tr>
</table>

20240131140333MACRANEE1E3635760D049F48D8B344390A3BA0B

| CHECK ONE: | | CASE DISPOSED | | x | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | x | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  010

Page 12 of 12

12 of 12